**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ray Escandon, | No. CV-24-00355-TUC-JCH |
| Plaintiff, | **ORDER** |
| v. | |
| Cincinnati Insurance Company, et al., | |
| Defendants. | |

Before the Court is Defendant Cincinnati Insurance Company's Motion for Partial Summary Judgment ("Motion") (Doc. 23). The matter is fully briefed (Docs. 23, 25, 26, 31, and 32), and the Court heard oral argument on June 25, 2025 (Doc. 30). The Court will deny the Motion.

**I.    Factual Background[1]**

In 2009, Plaintiff Ray Escandon suffered a back injury and underwent discectomy surgery. (Doc. 24 at 4.) Over a decade later, on March 1, 2021, Plaintiff was working for Curb Services, Inc. as a concrete finisher when he lifted a concrete mixer and re-injured his back. (*Id.*; Doc. 26-1 at 16.) In April 2021, Plaintiff filed a workers' compensation ("WC") claim with his employer for his industrial injury. (Doc. 24 at 5.) Between March and June, Plaintiff visited various medical providers, including Dr. Matthew Wilson, for treatment and reported worsening back pain radiating into his left leg.[2] (*See* Doc. 26

---

[1] The parties filed a Stipulated Statement of Facts (Doc. 24). Thus, the facts are undisputed unless otherwise noted.
[2] In Plaintiff's Response, he contends he did not receive "any medical care from March 1,

at 71–8; Doc. 26-1 at 21–52.)

On June 11, Plaintiff was rear-ended while working for Curb Services and driving a vehicle insured by Defendant under a business auto policy. (Doc. 24 at 1–2.) The at-fault driver fled the scene and has not been identified. (*Id.* at 1–2.) Although this accident happened while Plaintiff was working, Plaintiff apparently never filed a WC claim for the injuries he now claims this motor vehicle accident caused. (*See id.* at 2.)

On August 17, Dr. Wilson performed discectomy surgery on Plaintiff. (*Id.* at 5.) The WC insurer, a subsidiary of Defendant, accepted Plaintiff's WC claim for benefits on May 5, 2022. (Doc. 24 at 5; Doc. 26-1 at 2.) Plaintiff testified during WC proceedings that he continued to experience low back pain and left leg numbness after his surgery and was receiving medical treatment for his symptoms. (Doc. 26-1 at 16.) As of March 2023, Plaintiff and the WC insurer had agreed Plaintiff's medical condition was stationary with an unscheduled permanent disability, and the Arizona Industrial Commission ("AIC") had awarded Plaintiff supportive care for pain management. (Doc. 26-1 at 15, 19–20.) The medical expenses for the discectomy, pain management, and related services were billed to and fully covered by the WC insurer. (Doc. 24 at 5–6.)[3]

On June 10, 2024, Plaintiff filed his Complaint in state court making an Uninsured Motorist ("UM") claim against Defendant. (Doc. 1 at 1; Doc. 1-3 at 4.) On July 17, Defendant removed the Complaint to this Court under 28 U.S.C. § 1446(a). (Doc. 1 at 1–2.) The Complaint alleges the June 11, 2021 car accident aggravated his March 1, 2021 industrial injury. (Doc. 25 at 1.) Here, Plaintiff claims as damages medical expenses

---

2021, to June 11, 2021," and "all of his treatment is after the subject motor vehicle collision." (Doc. 25 at 3.) But the medical records provided by Defendant in Reply contradict this contention. (*See* Doc. 26-1 at 21–52.) The Court assumes Plaintiff will not be seeking to recover in this case for any medical expenses related to treatment he received before the motor vehicle accident occurred on June 11, 2021.

[3] The Court granted Defendant leave to file the Motion early in the discovery process with the understanding that the issue to be presented was purely legal. (Doc. 19.) Presently, the record only contains the AIC's March 2023 WC award. (Doc. 26-1 at 14–20.) As the briefing developed, a dispute surfaced over whether the WC insurer paid the same amount billed by the medical providers or negotiated a lesser amount which the providers accepted as payment in full. (*See* Doc. 25 at 8–9.) The Court need not make a finding on this factual issue to rule on the Motion.

already covered by the WC insurer ("Subject Medical Expenses").[4] (Doc. 24 at 5–6.)

## II.     The Motion (Doc. 23)

On April 4, 2025, Defendant filed the Motion seeking partial summary judgment to bar Plaintiff from "double recovery of certain medical expenses in this lawsuit." (Doc. 23 at 1.) Defendant argues the auto policy's terms and conditions preclude the recovery. *(Id.* at 4–7.) In Response, Plaintiff asserts he is not seeking double recovery, but the "full measure of his damages for his UM claim." (Doc. 25 at 4.) Plaintiff alleges the motor vehicle accident "aggravated" his existing WC injury and he is "entitled to a full measure of his reasonable and necessary medical expenses in an action against the unidentified driver, even if a portion of those expenses were paid by . . . [WC] insurance." (*Id.* at 5–6.) In Reply, Defendant argues Plaintiff can only obtain one recovery for medical expenses under Arizona law and Plaintiff lacks standing to recover for the Subject Medical Expenses under A.R.S. § 23-1023. (Doc. 26 at 2–3, 4–5.)

On June 25, the Court held oral argument. (Doc. 30.) Plaintiff argued § 23-1023—which allows one year for an injured party to pursue claims against a third-party who "aggravates" a previous industrial injury—does not apply to UM claims; rather, the statute only applies to claims against third parties. Plaintiff also argued the correct approach to avoid double recovery here is for Plaintiff to seek the full invoiced amount of the Subject Medical Expenses as damages against the UM insurer and then for the WC insurer to assert a lien on the UM recovery amounts already paid on the WC claim. Plaintiff confirmed the Subject Medical Expenses were fully covered by the WC insurer. However, Plaintiff speculated that the WC insurer likely paid only a fraction of the invoiced amounts and so Plaintiff's potential recovery here for the Subject Medical Expenses exceeds the potential WC lien.

Defendant argued § 23-1023 is an absolute bar to recovery for any medical expenses covered by the WC insurer. Defendant's argument goes that because the UM insurer steps

---

[4] The Subject Medical Expenses covered by the WC insurer and also claimed as damages here include: $87,829.00 from St. Joseph's Hospital, $1,439.50 from Sound Physicians, $5,275.00 from Western Neurology, $2,629.26 from Pima Pain Institute, $6,222.00 from Radiology Ltd., and $750.00 from Proactive Physical Therapy. (Doc. 24 at 5–6.)

into the shoes of the tortfeasor, § 23-1023 applies to UM claims. Defendant also believes the amount billed is the same amount WC insurance paid. Defendant stated that if the Court grants partial summary judgment, the only remaining damages at issue should be the medical expenses not already covered by the WC insurer and pain and suffering caused by the auto accident.

After oral argument, the Court requested supplemental briefing on § 23-1023's applicability. Doc. 30. Plaintiff's supplemental briefing argues § 23-1023 does not apply to UM claims and that the three-year statute of limitation for UM claims in A.R.S. § 12-555 applies. (Doc. 31 at 2–4.) Defendant counters that third-party claims are automatically assigned to the WC insurer under § 23-1023 and § 12-555 does not apply here. (Doc. 32 at 1–3.)

### III. Legal Standard

Summary judgment is appropriate when the parties have no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is material if it might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986). The Court draws all justifiable fact inferences in the nonmovant's favor. *Id.* at 255.

### IV. Analysis

The legal issues presented here are governed by Arizona law. "In determining the law of the state for purposes of diversity, a federal court is bound by the decisions of the highest state court." *Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 530 (9th Cir. 2011). If the state's highest court has not decided an issue, the federal court must predict how that high court would resolve it. *Id.* "The decisions of the state's intermediate appellate courts are data that a federal court must consider in undertaking this analysis." *Air-Sea Forwarders, Inc. v. Air Asia Co.*, 880 F.2d 176, 186 (9th Cir. 1989).

#### A. Section 23-1023 Does Not Bar Plaintiff's Claim.

Under § 23-1023(A), "[i]f an employee who is entitled to [WC] . . . further aggravates a previously accepted industrial injury by the negligence or wrong *of another*

- 4 -

*person* not in the same employ, the injured employee . . . *may pursue [a] remedy against the other person*." (Emphasis added.) "If the employee . . . do[es] not pursue a remedy pursuant to this section *against the other person* by instituting an action within one year after the cause of action accrues . . . *the claim against the other person* is deemed assigned to the insurance carrier or self-insured employer." § 23-1023(B) (emphasis added).

Here, the third-party tortfeasor who harmed Plaintiff fled the scene. Thus, Plaintiff asserts an UM claim against Defendant. Arizona caselaw holds that an UM claim is not a claim against "another person" or "other person" under § 23-1023. *See Sunstate Equip. Corp. v. Indus. Comm'n.*, 662 P.2d 152, 154 (Ariz. Ct. App. 1983); *State Farm Mut. Auto. Ins. Co. v. Karasek*, 523 P.2d 1324, 1326 (Ariz. Ct. App. 1974) (same); *Allied Mut. Ins. Co. v. Larriva*, 507 P.2d 997, 999 (Ariz. Ct. App. 1973), *abrogated on other grounds by*, *Schultz v. Farmers Ins. Grp. of Cos.*, 805 P.2d 381, 385 (Ariz. 1991).

*Sunstate* is instructive. There, an UM injured an employee while the employee was working and driving his employer's automobile. *Sunstate*, 662 P.2d at 153. His employer had WC insurance with one insurer and UM insurance with a second insurer. *Id.* The employee asserted claims under both policies and received separate payouts from each insurer. *Id.* The WC insurer then sought a lien under § 23-1023(C)(1981)[5] on the plaintiff's recovery under the UM policy. The statute provides a WC insurer with "a lien on the amount actually collectible from such other person" commensurate with the WC benefits paid if the injured employee "proceeds against such other person." *Id.* The administrative law judge denied the WC insurer's lien, and the Arizona court of appeals affirmed. *Id.* The court stated § 23-1023(A) permits "an injured employee to pursue his remedy against a tort-feasor (termed in the statute 'such other person')." *Id.* at 154. But the court found that "[a]n employee's recovery by reason of [UM] coverage is not an amount collectible from the tort-feasor (*i.e.*, 'such other person')" and denied the lien. *Id.*

*Sunstate*'s holding follows two other Arizona court of appeals opinions, *see Karasek*, 523 P.3d at 1326; *Larriva*, 507 P.2d at 999, and is consistent with the Arizona

---

[5] Although *Sunstate* interpreted the 1981 version of § 23-1023, the pertinent language remains the same and WC insurers are afforded lien rights under § 23-1023(D) (2018).

Supreme Court's subsequent holding in *Cundiff v. State Farm Mutual Automobile Insurance Co.*, 174 P.3d 270, 274 (Ariz. 2008) (providing that a WC insurer's lien under § 23-123(D) "does not extend to amounts collectible from an underinsured motorist insurer").[6] Accordingly, "[a]nother person" or "other person" as used in § 23-1023(A) and (B) refer to a third-party tortfeasor, and a claim against a UM insurer is not a claim against a third-party tortfeasor. Therefore, § 23-1023(B) does not apply to bar Plaintiff from asserting a UM claim here.

### B. Arizona Law Does Not Bar Plaintiff's Potential Double Recovery.

Arizona courts recognize the common law rule that "[a] payment made by a tortfeasor or by a person acting for him to a person whom he has injured is credited against his tort liability." Restatement (Second) of Torts § 920A (Am. L. Inst. 1979), *cited with approval in Centerpoint Mech. Lien Claims, LLC v. Commonwealth Land Title Ins. Co.*, 569 P.3d 796, 806 (Ariz. 2025); *see also Bridgestone/Firestone N. Am. Tire, L.L.C. v. Naranjo*, 79 P.3d 1206, 1209 (Ariz. Ct. App. 2003) (describing "the well-established and commonsense rule that plaintiffs may only obtain one recovery for their damages"). This principle aims to avoid double recovery for the plaintiff and an unnecessary windfall on the tortfeasor. *See Sahadi v. Mid-Century Ins. Co.*, 646 P.2d 307, 309 (Ariz. Ct. App. 1982); *see also Naranjo*, 79 P.3d at 1209 (describing two payments from separate tortfeasors for the same injuries as an "impermissible double recovery"). Applying this principle, a plaintiff may not recover medical expenses from a tortfeasor where the tortfeasor's insurer has already covered the expenses. *See Sahadi*, 646 P.2d at 309.

Because UM providers generally step into the tortfeasor's shoes, *see Spain v. Valley Forge Ins. Co.*, 731 P.2d 84, 86–87 (Ariz. 1986), Defendant argues the common law rule applies here to prohibit Plaintiff from receiving double recovery for the Subject Medical

---

[6] Underinsured motorist ("UIM") coverage "includes coverage for a person if the sum of the limits of liability under all bodily injury or death liability bonds and liability insurance policies applicable at the time of the accident is less than the total damages for bodily injury or death resulting from the accident." A.R.S. § 20-259.01(G). Accordingly, UIM coverage serves a gap-filling function like UM coverage and turns the UIM insurer into a source of compensation for a tortfeasor's outstanding liability. *See State Farm Mut. Auto. Ins. Co. v. Wilson*, 782 P.2d 727, 731 (1989).

Expenses.[7] Not so.

Insurance policies are contracts and, under Arizona law, the parties to an insurance agreement are limited only by the contract language, the Arizona and Federal Constitutions, statutes, and caselaw. *See Millar v. State Farm Fire & Cas. Co.*, 804 P.2d 822, 824–25 (Ariz. Ct. App. 1990) (insurance policies limited by contract language and public policy); *CSA 13-101 Loop, LLC v. Loop 101, LLC*, 341 P.3d 452, 454 (Ariz. 2014) (public policy pulled from constitution, statutes, and caselaw). Thus, although double recovery is avoided under the common law rule, a double recovery is "not all that uncommon in cases concerning insurance." *Sahadi*, 646 P.2d at 309.

*Miller v. American Standard Insurance Co.* illustrates the point. There, the plaintiff was in a car accident and recovered full policy limits from the at-fault driver and full medical payments ("medpay") from her own insurer. 759 F. Supp. 2d at 1145. The plaintiff then filed a claim for UIM benefits with her insurer and claimed the same medical bills already covered by her medpay coverage. *Id.* at 1145. Her carrier denied the UIM claim, "explaining that she has already been fully compensated for her damages through her [medpay] coverage" and the at-fault driver's policy limits. *Id.* at 1145. As support, the carrier pointed to a non-duplication limitation in the policy's medpay provision. *Id.* The district court found the provision unenforceable under Arizona law, explaining that the Arizona Supreme Court "categorically stated that 'the plain and unambiguous statutory text [of A.R.S. § 20-259.01(G)] defines the total applicable liability limits as the only amount deducted from the insured's total damages when calculating UIM coverage." *Id.* at 1149 (quoting *Cundiff*, 174 P.3d at 272). The court added this "is true, even where, as here, it results in duplicate recovery" from the same insurer. *Id.* The court then concluded that because the insurer's "medpay endorsement provision is not 'liability' coverage . . . it cannot be used to offset UIM payments." *Id.*

---

[7] Defendant states that because the UM insurer and WC insurer are related entities, they are the "same insurer." (Doc. 23 at 2; Doc. 26 at 3–4.) But Defendant never explains why the Court should treat payments from a subsidiary (the WC insurer) as payments from a parent company (the UM insurer). Even assuming the UM insurer and WC insurer are the "same entity," Arizona law permits Plaintiff's potential double recovery. *See Miller v. Am. Standard Ins. Co.*, 759 F. Supp. 2d 1144, 1149 (D. Ariz. 2010); *Schultz*, 805 P.2d at 385.

Indeed, Arizona takes an "absolutist approach" in interpreting § 20-259.01, which mandates all insurers make available both UM and UIM coverage and provides the limitations for said mandates. *Miller*, 759 F. Supp. 2d at 1149. And the Arizona Supreme Court has "long held that exceptions to coverage not permitted by [§ 20-259.01] are void." *Taylor v. Travelers Indem. Co. of Am.*, 9 P.3d 1049, 1054 (Ariz. 2000). Accordingly, an insurer can only avoid double recovery in UM cases if permitted by § 20-259.01.

Section 20-259.01(E) provides the following for UM coverage: "Uninsured motorist coverage, *subject to the terms and conditions of that coverage*, means coverage for damages due to bodily injury or death if the motor vehicle that caused the bodily injury or death is not insured by a motor vehicle liability policy . . . ." (Emphasis added.) Under the statute's plain language, UM coverage is "subject to the terms and conditions" of the UM policy. *See San Diego Gas & Elec. Co. v. Ariz. Dep't of Revenue*, 562 P.3d 879, 882 (Ariz. 2025) ("Absent ambiguity, [the Arizona Supreme Court] interpret[s] statutes according to their plain language . . . .") And in *Schultz*, the Arizona Supreme Court held § 20-259.01(E) permits contractual non-duplication endorsements so long as enforcing such an endorsement "does not interfere with the insured's right to full recovery for her loss." 805 P.2d at 385; *see also Terry v. Auto-Owners Ins. Co.*, 908 P.2d 60, 63–64 (Ariz. Ct. App. 1995) (citing *Schultz* and finding that defendant's "offset clause, which acts as a non-duplication provision, is enforceable in this instance because it does not deprive [plaintiff] of full recovery for her loss").

Accordingly, insurers may eliminate double recovery under their UM policy *contractually* through viable offset provisions. *See* § 20-259.01(E); *Schultz*, 805 P.2d at 384. Otherwise, where a plaintiff seeks coverage for an injury from both UM and WC insurers, Arizona law permits double recovery. *See Sunstate*, 662 P.2d at 155; *Karasek*, 523 P.2d at 1326; *see also Lou Grubb Chevrolet, Inc. v. Indus. Comm'n*, 846 P.2d 836, 842 (Ariz. Ct. App. 1992) (finding it "legally immaterial" whether WC claim and separate negligence action might "result [in] a double recovery for an employee" (alteration in original)).

Defendant maintains that three provisions in the UM policy require offsetting

Plaintiff's UM coverage by the Subject Medical Expenses already covered by the WC insurer. Plaintiff argues these offset provisions are not applicable.[8] The Court agrees with Plaintiff.

### 1. The UM policy does not contain an applicable offset provision.

Defendant first argues the UM policy excludes UM coverage where it is used as a substitute for an insurer's WC obligations. (Doc. 23 at 7.) The UM policy states: "This insurance does not apply to . . . [t]he direct or indirect benefit of any insurer or self-insurer under any workers' compensation, personal injury protection benefits, disability benefits, pension statutes or similar laws." (Doc. 24-1 at 28.) As pertinent here, this provision excludes coverage that would inure to the WC insurer's benefit. *See Larriva*, 507 P.2d at 998 (similar provision). The parties do not allege that the WC insurer will receive any benefit from Plaintiff's UM claim. And, as explained above, Plaintiff's UM claim is not subject to a statutory lien under § 23-1023(D).[9] Therefore, this is not an applicable offset provision.

Next, Defendant argues the UM policy excludes duplicate payments where one who is "legally liable" has already compensated the insured. (Doc. 23 at 7.) The UM policy includes the following limits:

> No one will be entitled to receive duplicate payments for the same elements of "loss" under this endorsement and any Liability Coverage Form.
>
> We will not make a duplicate payment under this endorsement for any

---

[8] Plaintiff also argues that even if the UM policy contained an applicable offset provision, he has not been fully compensated for his loss and thus the provision would be unenforceable. (Doc. 25 at 8–9.) *See Schultz*, 805 P.2d at 385. Under Arizona law, "plaintiffs are entitled to claim and recover the full amount of reasonable medical expenses charged, based on the reasonable value of medical services rendered, including amounts written off." *Romes v. Garrison Prop. & Cas. Ins. Co.*, No. CV-24-00176-PHX-SMB, 2024 WL 4452781 (D. Ariz. Oct. 9, 2024) (quoting *Lopez v. Safeway Stores, Inc.*, 129 P.3d 487, 495–96 (Ariz. Ct. App. 2006)). Because Arizona law permits double recovery under the terms of the UM policy here, the Court need not rule on this issue.

[9] At oral argument, Plaintiff offered that a typical course of action would be for the WC insurer to take out a lien on the potential UM recovery. But Plaintiff did not elaborate upon how the WC insurer could take out such a lien. Moreover, the WC insurer apparently has not asserted a lien against Plaintiff's recovery in this case.

> element of "loss" for which payment has been made by or for anyone who is *legally liable*. . . .
>
> The limit of insurance provided in this endorsement shall be reduced by all sums available for payment to the "insured" for "bodily injury" under all liability bonds or policies covering person(s) or organization(s) *legally liable* for the "accident".

Doc. 24-1 at 28 (emphasis added). These limits reduce Plaintiff's UM coverage by amounts paid by those "legally liable" for Plaintiff's loss.

Under Arizona law, WC insurers are not "legally liable" for loss. Arizona law distinguishes between WC insurance and liability insurance: "Liability insurance is 'insurance against legal liability,' while [WC] insurance is 'insurance of the obligations accepted by, imposed upon or assumed by employers under law.'" *Cundiff*, 174 P.3d at 273 (quoting A.R.S. § 20-252(1)–(2)). "Unlike liability insurance, [WC insurance] does not provide coverage based on fault" or legal liability. *Id.* As such, the Policy's limitation applies only to payments made by the tortfeasor or the tortfeasor's insurer and is not an applicable offset provision here. *See Spain*, 731 P.2d at 86 & n.2 (interpreting a similar limitation clause); *Ariz. Prop. & Cas. Ins. Guar. Fund v. Herder*, 751 P.2d 519, 524–25 (Ariz. 1988) (same).

Finally, Defendant argues Plaintiff's prior receipt of WC benefits for the Subject Medical Expenses establishes that those expenses legally and medically resulted from his prior work-related injury, not an uninsured vehicle as required by the policy. (Doc 23 at 6–7.) The UM policy provides that Defendant "will pay all sums the 'insured' is legally entitled to recover as compensatory damages from" an uninsured vehicle but that "liability for these damages *must result* from the ownership, maintenance, or use of" an uninsured vehicle. (Doc. 24-1 at 27 (emphasis added).)

In Arizona, a compensable WC claim requires both legal and medical causation. *Grammatico v. Indus. Comm'n*, 117 P.3d 786, 790 (Ariz. 2005). But a prior finding of causation for a WC claim does not necessarily preclude an additional finding of causation here. This is because there may be more than one proximate cause of an injury. *See*

*McDowell v. Davis*, 448 P.2d 869, 872 (Ariz. 1968), *superseded on other grounds by statute*; *Brand v. J. H. Rose Trucking Co.*, 427 P.2d 519, 523 (Ariz. 1967). In theory, the work accident and car accident *could* have both proximately caused Plaintiff's Subject Medical Expenses. *Cf. Lou Grubb*, 846 P.3d at 840–41 (finding causal relationship between industrial injury and need for treatment triggered by later motor vehicle accident). And causation is usually a factual issue decided by the jury that can only "be resolved as a matter of law when the record supports that result." *Perez v. Circle K Convenience Stores, Inc.*, 564 P.3d 623, 630 (Ariz. 2025). The limited record here does not support such a finding. Accordingly, this provision does not, as a matter of law, exclude the Subject Medical Expenses.[10]

In sum, Arizona law permits double recovery in UM cases where, as here, the UM policy does not contain an applicable offset provision. Therefore, the Court will deny the Motion.

**V.    Attorney Fees**

Defendant requests attorney fees under A.R.S. §§ 12-341.01 and -349(A). Section 12-341.01 permits a court to award fees to a successful party in "any contested action arising out of contract," while § 12-349(A) permits a court to award fees against a party who brings a claim without substantial justification or to unreasonably expand or delay the proceeding. Defendant's request under § 12-341.01 is denied without prejudice as premature. Defendant's request under § 12-349(A) is denied on the merits.

. . . .

. . . .

---

[10] To the extent Defendant made a collateral estoppel argument in its briefing, this Order does not decide that issue because the record from the WC proceedings is incomplete. (*See* Doc. 26 at 2–3.) Thus, it is unclear what causation findings the AIC made, what positions Plaintiff took before the AIC, and what, if any, preclusive effect those findings or the positions taken by Plaintiff before the AIC may have on this case. Further, Plaintiff ultimately has the burden of proving causation by showing "a natural and continuous sequence of events stemming from the [tortfeasor's] act or omission, unbroken by any efficient intervening cause, that produces an injury, in whole or in part, and without which the injury would not have occurred." *Henke v. Hosp. Dev. of W. Phoenix, Inc.*, No. CV-24-0259-PR, 2025 WL 2970333, at *4 (Ariz. Oct. 22, 2025) (quoting *Sampson v. Surgery Ctr. of Peoria, LLC*, 491 P.3d 1115, 1118 (2021)).

VI. **Order**

Accordingly,

**IT IS ORDERED denying** Defendants' Motion for Partial Summary Judgment and request for attorney fees (Doc. 23).

**Dated this 18th day of December, 2025.**

_____
John C. Hinderaker
United States District Judge